MARY FLANAGAN, ALSO KNOWN AS MARY FLANNEGAN, PLAINTIFF-APPELLANT, v. THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, A CORPORATION, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued June 8, 1953—Decided June 17, 1953.

Before Judges STEIN, PROCTOR and CONLON.

*Mr. John T. Keefe* argued the cause for plaintiff-appellant.

*Mr. Arthur J. Blake* argued the cause for defendant-respondent (*Messrs. Emory, Langan & Lamb,* attorneys).

The opinion of the court was delivered by

PROCTOR, J. A. D. (temporarily assigned). This is an appeal by the plaintiff from a judgment entered in favor of The Equitable Life Assurance Society of the United States as the result of a verdict found by a jury. The Equitable Life Assurance Society of the United States (hereinafter referred to as the defendant) issued its policy insuring the life of Konstanten Zarecky for $3,000. The policy also provided that in the event the insured met his death "directly and exclusively by external, violent and purely accidental means," the defendant would pay an additional $3,000. The policy further provided that no payment shall be made for the additional amount "for any loss resulting from * * * self-destruction or self-inflicted injury."

The insured died under circumstances hereinafter described, and after his death the defendant paid the face amount of the policy to the plaintiff, who was the beneficiary named therein, but refused to pay the additional $3,000.

The present action was brought to recover the above amount. The only question in issue at the trial was whether the death of the insured was accidental or self-inflicted.

There was testimony that Zarecky, after the death of his first wife, had remarried, but at the time of his death he had lived separately from his second wife for about eight years; he had no children. He was a heavy drinker. He had been employed regularly until he was hospitalized for a gall bladder operation about three months before his death. He was receiving "compensation" while unemployed, and planned to return to his work. There was also testimony that Zarecky had not worked for six months prior to his death; that he lived alone and owed his landlord three months' rent. Further, that the night before his death he visited the home of a friend, and during the course of conversation he said he was "very sad," that his health was poor, and "I don't know what I'm going to do. I have no money and no place." He stayed overnight and the next morning he borrowed one or two dollars, saying "I have to go to the doctor."

He left the friend's home about nine in the morning, and about 1:30 that afternoon he was struck and instantly killed by an eastbound train on the main line tracks of the Pennsylvania Railroad. There was some testimony that there was a path leading to the tracks at about the point where the insured was struck. There was also testimony by the engineer of the train that Zarecky walked rapidly up the embankment of the tracks when the train was 700 feet away from him; that the horn was blowing continuously, but that Zarecky paid no attention to it and stopped in the middle of the tracks and was down on his hands and knees facing the train when he was struck. There was also testimony that Zarecky had no difficulty with his hearing; that it was a clear day and one could see a distance of over a half-mile in the direction from which the train was approaching.

Plaintiff's first ground of appeal is that the trial court erred "in instructing the jury that the presumption against suicide was out of the case when the case was given the jury for consideration and determination." Plaintiff urges that the charge deprived the jury of the right to consider the presumption against suicide. We find no error in

that part of the charge to which objection was made, as it is in harmony with the opinion of our former Court of Errors and Appeals in *Kirschbaum v. Metropolitan Life Insurance Co.*, 133 *N. J. L.* 5 (*E. & A.* 1945), wherein it was stated at *page* 8:

"In *Dunn v. Goldman*, 111 *N. J. L.* 249, the Supreme Court speaking through Mr. Justice Perskie said that 'a presumption is not evidence but merely a rule about evidence.' This court held in *Domanowski v. Prudential Insurance Co.*, 116 *Id.* 247, that 'a presumption is applied by the court in a proper case to make that *quantum* of proof that, without which, the court would be obliged to nonsuit or direct a verdict. * * * A presumption is not evidence and cannot be treated as evidence by the jury in reaching a verdict.' *Dunn v. Goldman* and *Domanowski v. Prudential Insurance Co.*, *supra*, were cited in support of the proposition that a presumption is not evidence in the case of *Aydelotte v. Metropolitan Life Insurance Co.*, 124 *Id.* 266, and *Carroll v. Prudential Insurance Co.*, 125 *Id.* 397, both decisions of this court. The statement that a presumption is not evidence to establish the presumed fact is meaningless if the jury is instructed that it may take the presumption into consideration. While there may be a conflict of authority in other jurisdictions as to whether the presumption against suicide has any probative force and is to be weighed by the jury (*Cf.* annotation in 103 *A. L. R.* 185) the rule is settled in New Jersey that the presumption is not evidence and consequently is not for the jury to consider."

Plaintiff's other ground of appeal is that the trial court erred in denying plaintiff's motion for a new trial. The motion was based on the ground that the verdict was contrary to the weight of the evidence.

The evidence introduced at the trial was fairly susceptible of divergent inferences and the jury was entitled to draw its own conclusions therefrom. *Bazinsky v. Conklin,* 8 *N. J.* 40 (1951). We are unable to say that the verdict of the jury, in view of the testimony, was so far contrary to the weight of the evidence that it appears clearly and convincingly to have been the result of mistake, passion, prejudice or partiality. *Hager v. Weber,* 7 *N. J.* 201, 210 (1951). *Rule* 1:2–20(*a*).

Judgment affirmed.